**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>ex rel. SIDESOLVE, LLC, | ) | |
| Plaintiff-Relator, | ) | Case No. ____________<br>**FILED UNDER SEAL** |
| v. | ) | |
| TALARIA TRANSPORTATION LLC, | ) | |
| Defendant. | ) | |

**COMPLAINT**

1. Relator Sidesolve LLC ("Relator") brings this action on behalf of itself and the United States of America against defendant Talaria Transportation LLC for violations of the federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.*

2. This action seeks to recover funds that were loaned to Defendant through the federal Government's Paycheck Protection Program ("PPP") and forgiven as a result of a false application.

3. Sidesolve LLC is a company that uses data to investigate large-scale corporate fraud. Its goal is to use the technology it is developing to protect individuals on private healthcare plans. It is currently developing its technology using public databases. It uses computational statistics to match entities across multiple resources such as databases, social media, corporate filings, and other sources. From this broader picture, it finds fraud leads, which it follows up with a more traditional manual investigation. In sum, Sidesolve LLC uses its expertise and proprietary technology to both collect the scattered pieces of the fraud puzzle and also to put them together into a complete picture of the alleged fraud.

4. While searching for potential PPP loan fraud in data released by the SBA, Sidesolve came

across Defendant Talaria Transportation LLC, a marijuana-related business that had applied for a PPP loan of $260,230. The loan was forgiven in its entirety, plus interest.

5. Companies that engage in illegal activities, including Direct and Indirect Marijuana Businesses, were not eligible for PPP loans. By applying for the loan and ultimately having the loan forgiven, Defendant violated the False Claims Act. It should be required to repay the PPP loan.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. §§ 1331, 1345.

7. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 31 U.S.C. § 3732(a), as the defendant resides or transacts business in this jurisdiction and violations of the False Claims Act described herein occurred in this district.

## THE PAYCHECK PROTECTION PROGRAM

8. During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 of the CARES Act contains a program called the Paycheck Protection Program ("PPP"), a program administered by the U.S. Small Business Administration ("SBA") to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic.

9. Section 1102 of the CARES Act temporarily permitted SBA to guarantee 100% of the PPP loans. Section 1106 of the CARES Act provided for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP.

10. The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine

eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness.

11. For First Draw PPP Loans, lenders were compensated by the federal government via processing fees based on the balance of the financing outstanding at the time of final disbursement, in the following amounts:

- Five (5) percent for loans of not more than $350,000;
- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.

12. In general, the maximum amount borrowers could borrow was calculated by aggregating payroll costs from the previous year, with annual employee salaries capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

13. Each borrower certified on the First Draw loan application that they were eligible to receive the loan under the program guidelines and that their applications and supporting documentation were accurate.

14. Borrowers were able to seek forgiveness of the loan if the funds were used for eligible payroll costs, payments on business mortgage interest payments, rent, or utilities.

**PPP REGULATIONS FOR MARIJUANA-RELATED BUSINESSES**

15. Effective April 1, 2019, the SBA issued SOP 50 10 5(K), which set forth requirements for lenders seeking to participate in SBA lending programs. This SOP "[i]ncorporated policy changes included in SBA Policy Notice 5000-17057 concerning the eligibility of marijuana-related businesses," which explained that business engaged in illegal activity—including "Applicants that make, sell, service, or distribute products or services used in connection with

illegal activity, unless such use can be shown to be completely outside of the Applicant's intended market"—are ineligible for SBA loans.

16. Specifically, Direct Marijuana Businesses, Indirect Marijuana Businesses, and certain Hemp-Related Businesses were ineligible for SBA loans because "federal law prohibits the distribution and sale of marijuana, financial transactions involving a marijuana-related business would generally involve funds derived from illegal activity. Therefore, businesses that derive revenue from marijuana-related activities or that support the end-use of marijuana may be ineligible for SBA financial assistance."

17. On August 2, 2019, the SBA issued Information Notice Control No. 6000-19005, Subject: Guidance on Grantees Providing Assistance to Marijuana-Related Businesses. Control No. 6000-19005 loosened restrictions on hemp-related businesses but retained exclusions on marijuana-related businesses:

> Because federal law prohibits the distribution and sale of marijuana, financial transactions involving a marijuana-related business would generally involve funds derived from illegal activity. Therefore, businesses that derive revenue from marijuana-related activities or that support the end-use of marijuana may be ineligible for SBA-funded technical assistance. The question of whether a particular business is eligible for assistance under an SBA program must be determined on an annual, case-by-case basis and depends upon the nature of the business' specific operations.
>
> A Direct Marijuana Business is a business that grows, produces, processes, distributes, or sells marijuana or marijuana products, edibles, or derivatives, regardless of the amount of such activity. This applies to recreational use and medical use even if the business is legal under local or state law where the applicant business is or will be located.
>
> An Indirect Marijuana Business is a firm that derived any of its gross revenue for the previous business year (or, if the firm is a start-up, projects to derive any of its gross revenue for the next business year) from sales to Direct Marijuana Businesses of products or services that could reasonably be determined to aid in the use, growth, distribution, enhancement, or other development of marijuana. Examples of Indirect Marijuana Businesses include businesses that:

- Provide marijuana product testing services (strength, purity, etc.);

> - Sell or install grow lights or hydroponic or other specialized equipment to Direct Marijuana Businesses;
>
> - Sell smoking devices, pipes, bongs, inhalants, or other products primarily designed, intended, or marketed to facilitate marijuana consumption; and
>
> - Advise or counsel Direct Marijuana Businesses on the specific legal, financial/accounting, policy, regulatory or other operational issues specifically associated with establishing, promoting, or operating a Direct Marijuana Business.
>
> …
>
> Finally, as to the issue of Cannabidiol (CBD) and products containing CBD, in practice CBD may be derived from either marijuana or hemp. When CBD is derived from marijuana, it is a Schedule 1 controlled substance under the Controlled Substances Act (21 U.S.C. § 801 et seq.).
>
> This means that firms, that develop or market CBD and CBD products derived from marijuana, would be considered Direct Marijuana Businesses as defined above and would thus not be eligible to participate in SBA technical assistance programs.

18. At the beginning of the PPP program, the SBA further clarified that marijuana-related businesses would not be eligible for PPP funding. For example, on March 23, 2020, in response to a question "Are cannabis companies eligible?" for EIDL loans, the SBA tweeted from its @SBAPacificNW account:

> With the exception of businesses that produce or sell hemp and hemp-derived products (Agriculture Improvement Act of 2018, Public Law 115-334), marijuana-related businesses are not eligible for SBA-funded services (OMB, 2 C.F.R. § 200.300).

19. In response to a follow-up question about the cited C.F.R., the SBA tweeted:

> [The regulation] says "to ensure that federal funding is expended and associated programs are implemented in full accordance with U.S. statutory and public policy requirements." In short, it's because marijuana is not federally legal & SBA is a federal agency.

20. The Interim Final Rule, 85 FR 20811, effective April 15, 2020 but first published by the SBA on April 2, 2020, stated "You are ineligible for a PPP loan if, for example… [y]ou are

engaged in any activity that is illegal under Federal, state, or local law."

21. There were dozens, if not hundreds, of articles published by journalists, accountants, and law firms explaining that Marijuana-Related Businesses were ineligible for PPP loans, both before and after Defendant's application.

22. Nevertheless, Defendant applied for and accepted a PPP loan and applied for and received loan forgiveness.

23. The First Draw PPP Borrower Application Form required the applicant to certify in good faith that, *inter alia*:

> The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
>
> The Applicant is not engaged in any activity that is illegal under federal, state or local law.
>
> I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

24. Talaria Transportation LLC had to make these certifications to receive PPP funding, and those certifications were false and material statements when made by Talaria Transportation LLC because it was a marijuana-related business.

## PARTIES

25. Relator Sidesolve LLC is a company that uses data to investigate scaled corporate fraud.

26. Defendant Talaria Transportation LLC ("Talaria Transportation") is a Pennsylvania

limited liability company with a principal office location of 601 N. Newtown Street Rd., Newtown Square, PA 19073.

**PPP LOAN SCHEME**

27. Talaria Transportation was approved for a First Draw PPP loan of $260,230 by Wilmington Savings Fund Society, FSB on April 13, 2020. The loan, including interest, was forgiven, a total of $261,604. Talaria listed NAICS code 488999 (all other support activities for transportation) on its PPP loan application.

28. Talaria Transportation is a cannabis logistics transportation services company that provides delivery and storage for medical cannabis companies. It markets itself as "the legal cannabis industry's most trusted logistics transportation service." Its customers include medical marijuana growers Prime Wellness of Pennsylvania, PurePenn, and Calypso Enterprises. Its founder, Ari Raptis, explained "We are the ones behind the scenes making sure their shelves are stocked for their patient communities."

29. Operating under the Talaria brand are affiliated companies National Secure Transport LLC, which facilitates cash movement by providing ATM solutions to cannabis companies, and Melly Home Delivery, which provides a platform to connect dispensaries to consumers to fulfill home deliveries. Talaria Transportation began operating in 2017, Melly Home Delivery launched in 2019, and National Secure Transport LLC was established in December 2020.

30. According to an article published on June 1, 2020, Talaria Transportation operated in 14 states and generated $11 million in annual revenue at the time.

31. According to a November 16, 2023 article, Talaria now operates in 29 states and "transports an average of $1.2 billion in cannabis product annually, and the combined companies service more than 500 businesses weekly."

32. On April 10, 2020, the Talaria Transportation website posted an article acknowledging that pandemic-related supply chain issues were "exacerbated with cannabis because it's not legal on a federal level and therefore can't cross state lines."

33. Talaria Transportation is at least an Indirect Marijuana Business because it provides products and services that could reasonably be determined to aid in the use, growth, distribution, enhancement, or other development of marijuana. This includes providing delivery services for marijuana growing companies.

34. Talaria Transportation is also arguably a Direct Marijuana Business because it distributes marijuana by engaging in deliveries to dispensaries and homes.

35. Defendant disregarded clear notice from the SBA that Marijuana-Related Businesses were ineligible for PPP funding, and it made a material and false certification that it was not engaged in illegal activities.

36. Accordingly, Talaria Transportation should be required to repay its loan forgiveness and the processing fees, plus penalties.

## COUNT I
## VIOLATIONS OF 31 U.S.C. § 3729
## FALSE CLAIMS ACT

37. Relator hereby incorporates and realleges all other paragraphs as if fully set forth herein.

38. As set forth above, Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

39. As set forth above, Defendant knowingly made, used, or caused to be made or used, false records or statements material to numerous false claims, in violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

40. Due to Defendant's conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim, record, or statement. 31 U.S.C. § 3729.

41. Relator is entitled to reasonable attorneys' fees, costs, and expenses. 31 U.S.C. § 3730(d)(1).

**PRAYER FOR RELIEF**

WHEREFORE, Relator prays for judgment against Defendant:

(a) awarding the United States treble damages sustained by it for each of the false claims;

(b) awarding the United States a maximum civil penalty for each of the false claims and statements;

(c) awarding Relator the maximum relator's share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

(d) awarding Relator litigation costs and reasonable attorneys' fees and expenses; and

(e) granting such other relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Relator hereby respectfully demands trial by jury on all issues and counts triable as of right before a jury.

Respectfully submitted,

/s/ Darth M. Newman
Darth M. Newman
Pennsylvania Bar No. 209448
**Law Offices of Darth M. Newman**
1140 Thorn Run Rd # 601
Coraopolis, PA 15108
Telephone: 412-436-3443
darth@dnewmanlaw.com

Jason Marcus (applying for *pro hac vice*)
Georgia Bar No. 949698
**Bracker & Marcus LLC**
3355 Lenox Rd., Suite 660
Atlanta, Georgia 30326
Tel: (770) 988-5035
Fax: (678) 648-5544
Jason@FCACounsel.com

Attorneys for Relator Sidesolve LLC